**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Driesen,<br><br>    Plaintiff,<br><br>v.<br><br>RSI Enterprises Incorporated,<br><br>    Defendant. | No. CV-18-08140-PCT-DWL<br><br>**ORDER** |

On December 28, 2018, the Court ordered the parties to submit supplemental briefing regarding whether Plaintiff Kimberly Driesen ("Driesen") has standing to pursue the claim asserted in her complaint. (Doc. 30.) Having considered the parties' supplemental briefs (Docs. 31 & 32), the Court finds that Driesen has standing.

Also pending before the Court are (1) Defendant RSI Enterprises Incorporated's ("RSI") motion to dismiss under Rule 12(b)(6) (Doc. 16) and (2) Driesen's motion for leave to file a surreply (Doc. 22). These motions are fully briefed and neither party has requested oral argument. As explained below, the Court denies both motions.

**BACKGROUND**

A. <u>Factual Allegations</u>

The complaint was filed on June 27, 2018. (Doc. 1.) The following summary assumes the truth of all allegations contained therein.

RSI called Driesen on February 27, 2018 at approximately 10:12 a.m. (*Id.* ¶ 21.) At that time, RSI left Driesen the following voicemail: "We have an important message

from RSI Enterprises. This call is from a debt collector. Call 602-627-2301. Thank you." (*Id.* ¶ 22.) Driesen listened to this message that day. (*Id.* ¶ 23.)

A different RSI employee called Driesen on the same day at approximately 11:18 a.m. (*Id.* ¶ 27.) At that time, RSI left Driesen the following voicemail: "We have an important message from RSI Enterprises. This is a call from a debt collector. Please call 602-627-2301. Thank you." (*Id.* ¶ 28.)

Several days later, Driesen received a letter from RSI, dated February 27, 2018, in which RSI disclosed that it was attempting to collect a debt and that any information obtained would be used for that purpose. (*Id.* ¶¶ 25-26.)

B. <u>Legal Theory</u>

Driesen brings one claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Specifically, she alleges that RSI "violated 15 U.S.C. § 1692e(11) by failing to disclose in its initial communication with [her] that the communication was an attempt to collect a debt and any information obtained would be used for that purpose." (Doc. 1 ¶ 56.)

**ANALYSIS**

I. <u>Standing</u>

A. <u>Legal Standard</u>

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo I*"), the Supreme Court considered whether a plaintiff alleging a violation of a regulatory scheme—the Fair Credit Reporting Act of 1970 ("FCRA")—had standing to pursue his claim. The Court began by reiterating several long-established standing principles, including that the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," that the plaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing these elements," and that the injury-in-fact element is satisfied only if the plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1547-48 (citations omitted). The

Court further stated that for an injury to be "particularized," "it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (citation omitted). And for an injury to be "concrete," it "must be '*de facto*'; that is, it must actually exist." *Id.* The Court cautioned, however, that "concrete" is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* at 1549.

After articulating these standards, the Court applied them to the FCRA claim before it. The Court concluded, on the one hand, that standing doesn't automatically arise whenever a plaintiff alleges a violation of a statutory scheme. The Court explained that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," that "Article III standing requires a concrete injury even in the context of a statutory violation," and that a plaintiff therefore cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. On the other hand, the Court recognized that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* Thus, the Court remanded to the Ninth Circuit to assess whether the particular type of FCRA violation alleged by the plaintiff "entail[ed] a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

On remand, the Ninth Circuit concluded the plaintiff had standing. *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) ("*Spokeo II*"). In reaching this conclusion, the court adopted the following two-part test to determine whether a plaintiff alleging a statutory violation has sufficiently established a concrete injury: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such

interests." *Id.* at 1113. With respect to the first element, the court emphasized that "congressional judgment still plays an important role in the concreteness inquiry" and that "Congress's judgment as to what amounts to a real, concrete injury is instructive." *Id.* at 1112. With respect to the second element, the court held that *Spokeo I* "requires some examination of the *nature* of the specific alleged [violation] to ensure that [it] raise[s] a real risk of harm to the concrete interests that [the statutory scheme] protects." *Id.* at 1116.

B. <u>Analysis</u>

On December 28, 2018, the Court issued an order requesting supplemental briefing because it wanted to be certain Driesen had standing to bring her specific claim and was not relying on the mistaken theory that a debt collector causes a constitutionally-cognizable injury whenever it violates the FDCPA. (Doc. 30.)

RSI argues in its supplemental brief that Driesen lacks standing because she did not allege any informational violation, risk of financial harm, detrimental reliance, or actual tangible harm. (Doc. 31.) Thus, although RSI acknowledges that "the majority of courts that have construed *Spokeo* in the context of the [FDCPA] have found standing," it argues the facts of this case require a different result. (*Id.*)

Driesen argues in her supplemental brief that she suffered an injury upon listening to RSI's initial voicemail because it "infringed upon her concrete interest in being reminded that any future communications with RSI will be adversarial in nature." (Doc. 32 at 4.) She contends this sort of injury satisfies *Spokeo II*. (*Id.*)

The Court agrees with Driesen. First, the statutory provision at issue here, 15 U.S.C. § 1692e(11), was established to protect concrete interests, as opposed to purely procedural rights. Under the FDCPA, consumers have an affirmative right to receive certain types of information—including a warning that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," *see* 15 U.S.C. § 1692e(11)—when a debt collector makes its first communication. The Ninth Circuit has stated the "remedial purpose" of these disclosure requirements is to augment "consumers' ability to chart a course of action in response to a collection effort." *Davis v. Hollins Law*,

832 F.3d 962, 963 (9th Cir. 2016). Thus, the disclosure requirement embodied in 15 U.S.C. § 1692e(11) can't be dismissed as a mere procedural right—it was established by Congress to protect consumers' concrete interests. *See also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)) ("The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007) ("The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices."); *Watkins v. Inv. Retrievers, Inc.*, 2018 WL 558833, *3 (E.D. Cal. 2018) (quoting *Spokeo I*, 136 S. Ct. at 1554 (Thomas, J., concurring)) (holding that 15 U.S.C. § 1692e "do[es] not merely impose procedural requirements upon debt collectors, but instead 'create[s] a private duty owed personally to' a consumer by a debt collector to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt").

This conclusion is buttressed by the Ninth Circuit's post-*Spokeo I* case law construing other statutory schemes. In *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), the plaintiff alleged a prospective employer violated the FCRA by failing to clearly and affirmatively inform him that his credit history and other information could be collected and used. *Id.* at 497-98. The Ninth Circuit concluded the statutory provision at issue "create[d] a right to information" such that a violation preventing a consumer from making a fully informed choice constituted "a concrete injury" that conferred "Article III standing to bring th[e] lawsuit." *Id.* at 499-500. So, too, here.

Under the second prong of the *Spokeo II* test, Driesen must show "the specific procedural violations . . . actually harm[ed], or present a material risk of harm to," the interests protected by the FDCPA. 867 F.3d at 1113. Driesen has met that burden here. RSI's violation of 15 U.S.C. § 1692(e)(11)—again, its failure to affirmatively inform

Driesen that it was attempting to collect a debt and that any information she provided could be used against her—created a risk that Driesen might volunteer information to her detriment during subsequent interactions with RSI. That Driesen didn't actually call back RSI and volunteer any information is irrelevant—a risk of harm suffices. Because she alleges she listened to the voicemail some period of time before receiving the letter that contained the required disclosures, she has sufficiently alleged a risk of harm.[1]

II. RSI's Motion to Dismiss

A. Legal Standard

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

B. Analysis

RSI argues, as a threshold matter, that a materiality requirement applies in this case. (Doc. 16 at 3-4; Doc. 19 at 1 ["Materiality is Requirement to Find a Violation of 15 U.S.C. § 1692e(11)."].) Driesen argues that a materiality requirement only applies in FDCPA

---

[1] The Court has identified one case, *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018), where a plaintiff asserting a claim under 15 U.S.C. § 1692e(11) was found to lack standing. But there, the communication from the debt collector, which failed to provide all of the FDCPA's required informational disclosures, "indicated that the Hagys would not have to pay the balance on their loan and that the lender would not pursue any other remedies against the Hagys." *Id.* at 618. Given these unique facts, the Sixth Circuit concluded the disclosure violation didn't create any actual harm or material risk of harm to the plaintiffs. *Id.* at 621-22. Here, in contrast, because RSI was trying to collect a debt from Driesen, the disclosure violation created a risk of harm.

- 6 -

cases involving false or deceptive statements, not in cases, such as this one, involving failures to make required informational disclosures. (Doc. 17 at 8-12.)

The Court concludes that, under Ninth Circuit law, a materiality requirement probably applies to claims arising under § 1692e(11) but further concludes that, accepting Driesen's allegations as true, RSI's alleged omission was material. In *Davis v. Hollins Law*, 832 F.3d 962 (9th Cir. 2016), the defendant was accused of violating 15 U.S.C. § 1692e(11) by failing to make one of the informational disclosures (*i.e.,* the defendant was a debt collector) required by that provision. *Id.* at 963-64. In the "legal background" portion of its opinion, the Ninth Circuit noted that (1) a plaintiff asserting such a claim must demonstrate, under "an objective standard," that "the least sophisticated investor would likely be misled by the communication"; and (2) "[w]e have also held that any error in a debt collectors' communications must be material in order to be actionable under § 1692e." *Id.* at 964 (citations omitted). Thus, the Court construes *Davis* as requiring a showing of materiality in all § 1692e(11) cases.[2]

The Court will note that, as a practical matter, it's not entirely clear how the first requirement under *Davis* (*i.e.,* proving the least sophisticated investor would likely be misled) differs from the second requirement (*i.e.,* proving materiality). In its motion papers, RSI seemed to view the two requirements as interchangeable. (Doc. 16 at 3-4 ["[A] debt collector's false or misleading representation must be 'material' in order for it to be actionable under the FDCPA. . . . In the present case, the failure to include a phrase that any information obtained in response to the voicemail would be used to collect the debt is

---

[2] The law is unsettled in other Circuits as to whether materiality is required in the § 1692e(11) context, and some courts have not required materiality in cases involving a failure to disclose under this and other FDCPA provisions. *Compare Kagan v. Selene Fin. L.P.*, 210 F. Supp. 3d 535, 548 (S.D.N.Y. 2016) (citations omitted) ("Although the Second Circuit has not clearly established that violations of § 1692e(11) must be material in order to be enforceable, it has cited other circuits . . . so holding with apparent approval, and numerous district courts therein have adopted the materiality requirement . . . ."), *with Prendergast v. First Choice Assets, LLC*, 317 F. Supp. 3d 1018, 1025-26 (N.D. Ill. 2018) (citations omitted) ("[I]t is not clear that this materiality requirement applies [sic] § 1692e(11) specifically . . . . The Fourth Circuit explicitly rejected imposing materiality on this specific provision. Multiple courts in this district have also questioned whether materiality applies . . . ."). Nevertheless, as discussed above, the Court is required to follow *Davis* here.

not misleading to the least sophisticated debtor."].) But semantics aside, the broader point is that, in the Ninth Circuit, a debt collector's failure to provide all of the informational disclosures required by § 1692e(11) doesn't automatically trigger liability—something more is required.

Nevertheless, Driesen's complaint is not subject to dismissal at the 12(b)(6) stage because it alleges sufficient facts to show that RSI's violation of the FDCPA was, in fact, likely to mislead the least sophisticated investor and material. In the Ninth Circuit, the "plaintiff need not even have actually been misled or deceived by the debt collector's representation." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1117 (9th Cir. 2014). Instead, "whether conduct violates []§ 1692e . . . requires an objective analysis that considers whether 'the least sophisticated debtor would likely be misled by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (citation omitted). The "least sophisticated debtor" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Davis*, 832 F.3d at 964 (citation omitted). "[T]he 'least sophisticated debtor may be uninformed, naive, and gullible,' [but] the debtor's 'interpretation of a collection notice cannot be bizarre or unreasonable.'" *Id.* (citation omitted). In the Ninth Circuit, "the materiality requirement functions as a corollary inquiry into whether a statement is likely to mislead an unsophisticated consumer," as "immaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions." *Donohue*, 592 F.3d at 1034.

Accepting Driesen's allegations as true, RSI's violation of the FDCPA satisfies these standards. The February 27, 2018 10:12 a.m. voicemail message disclosed only that it was from a debt collector and that the debt collector had an "important message" for Driesen. (Doc. 1 ¶ 22.) The least sophisticated consumer would not necessarily know the "important message" related to attempting to collect a debt from Driesen or that any information obtained from Driesen during a subsequent call would be used for the purpose of attempting to collect the debt. Indeed, Congress presumably felt it necessary to mandate such disclosures because it perceived that some consumers would, in the absence of an

affirmative warning, be confused and prone to manipulation.

This case is also unlike *Davis*. There, the court found (following a bench trial in the district court) that, because there were prior communications between the debt collector and the plaintiff, a debtor with a basic level of understanding would have known the voicemail was from a debt collector and therefore "the call was not 'false, deceptive, or misleading.'" 832 F.3d at 967 (quoting 15 U.S.C. § 1692e). Here, the complaint does not allege there were any prior communications between Driesen and RSI that would have made it reasonable to expect Driesen to know RSI was calling in an attempt to collect a debt from her and that any information she shared with RSI could be used for that purpose. The Court, thus, disagrees with RSI's assertion that "it is not clear how Ms. Driesen could return a call to debt collector and not know that her statements might be used for debt collection purposes." (Doc. 19 at 2.) For example, an unsophisticated consumer might have thought RSI was calling to obtain information about a friend or relative who owed money. Moreover, the standard is not whether Driesen would have this knowledge, but "whether the least sophisticated debtor would likely be misled" by the voicemail. *Donohue*, 592 F.3d at 1033 (citation and internal quotation marks omitted).

RSI also argues that "Plaintiff has not alleged that the voicemail message was misleading or inaccurate" and that "Plaintiff also did not allege that the least sophisticated debtor would not understand the purpose of the call was to collect a debt and that any information provided to Plaintiff would be used for that purpose." (Doc. 16 at 5; Doc. 19 at 3.) But Driesen was not required to include such specific allegations in her complaint. She was only required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Fitness Holdings Int'l*, 714 F.3d at 1144 (quoting *Iqbal*, 556 U.S. at 678).

Finally, RSI argues that "[a]s in *Donahue*, nothing in the voicemail message undermined Plaintiff's 'ability to intelligently choose her actions concerning the debt,'" *Donahue*, 592 F.3d at 1034, because "[f]ollowing receipt of the allegedly misleading voicemail, Plaintiff had the opportunity to communicate directly with RSI about her debt,

contact a lawyer or other professional to aid in resolving the debt or ignore the voicemail." (Doc. 16 at 5; Doc. 19 at 3-4.) Yet as discussed above, Driesen would not necessarily have known that, in "communicat[ing] directly with RSI about her debt," any information she provided to RSI would be used for the purpose of collecting that debt. Thus, she was not able to "*intelligently* choose her action concerning the debt," *Donahue*, 592 F.3d at 1034 (emphasis added), or make a fully-informed choice of how "to chart a course of action in response to a collection effort." *Davis*, 832 F.3d at 963.

III. Driesen's Motion for Leave to File a Surreply

On September 17, 2018, Driesen moved for leave to file a surreply to address RSI's statement in its reply that "[i]f [Driesen] called RSI to discuss her debt, she would have been given the Mini-Miranda at the beginning of that call." (Doc. 22 at 2 (quoting Doc. 19 at 2.)) RSI opposed this motion. (Doc. 24.)

The Court did not consider the new factual assertions contained in RSI's reply because (1) RSI didn't raise those assertions in its original motion, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."), and (2) those assertions constitute, in any event, an improper attempt to introduce new facts, beyond those contained in the complaint, at the 12(b)(6) stage, *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."). Accordingly, the Court denies, as moot, Driesen's motion for leave to file a surreply.

**IT IS ORDERED** that**:**

1. Driesen has standing to pursue her claim;

2. RSI's motion to dismiss (Doc. 16) is **DENIED**; and

3. Driesen's motion for leave to file a surreply (Doc. 22) is **DENIED**.

Dated this 22nd day of January, 2019.

_____
Dominic W. Lanza
United States District Judge

- 10 -